UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARNELL VAUGHN, | |
| Plaintiff, | |
| -v- | No. 25-CV-683-LTS |
| NEW YORK CITY TRANSIT AUTHORITY, NEW YORK STATE DEPARTMENT OF LABOR, NEW YORK STATE UNEMPLOYMNET INSURANCE APPEAL BOARD, LINA SEGURA-ZAMORA, and JOY CAROLINE TROTTER. | |
| Defendants. | |

MEMORANDUM ORDER GRANTING MOTIONS TO DISMISS

Plaintiff Parnell Vaughn ("Plaintiff" or "Vaughn") brings this pro se action against Defendants New York City Transit Authority ("NYCTA"), New York State Department of Labor ("DOL"), New York State Unemployment Insurance Appeal Board ("UIAB"), Ms. Lina Segura-Zamora,[1] and Administrative Law Judge Joy Caroline Trotter (collectively, "Defendants"), asserting claims under several federal and state law provisions including Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") for discrimination on the basis of disability.  (Docket entry no. 32 (the "Amended Complaint" or "AC").)  Plaintiff seeks hundreds of millions of dollars in damages against various defendants as well as injunctive

---

[1]    DOL employee Lina Segura-Zamora is now known as Lina Alnajjar, and the Court will use her current name in this Order.  (See docket entry no. 36 ("State Mem.") at 8.)

relief.  (Id. at 41-46.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331.

Defendants move separately to dismiss the Amended Complaint.[2]  The NYCTA moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket entry nos. 38 (the "NYCTA MTD"); 39 ("NYCTA Mem.").)  Writing jointly, the DOL, the UIAB, Ms. Alnajjar, and Administrative Law Judge Joy Caroline Trotter ("ALJ Trotter") (collectively, the "State Defendants") move to dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Docket entry nos. 34 (the "State Defendants MTD"); 36 ("State Mem.").)  The Court has reviewed the parties' submissions thoroughly.  For the following reasons, Defendants' motions to dismiss the Amended Complaint are granted.

## I.    BACKGROUND

The following facts, which are alleged in the Amended Complaint or drawn from documents integral to it, are taken as true for the purpose of resolving these motions to dismiss.[3] Mr. Vaughn was hired by the NYCTA as a conductor on July 17, 2017.  (AC ¶ 1.)  On April 4, 2023, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") ("EEOC Complaint") asserting that he suffered retaliation and discrimination by the

---

[2]    NYCTA's first motion to dismiss (docket entry no. 10 ("NYCTA Motion to Dismiss Complaint") is denied as moot because Mr. Vaughn subsequently filed an Amended Complaint, in response to which Defendant NYCTA filed a second motion to dismiss (docket entry no. 38).

[3]    "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (citation omitted).

NYCTA based on his disability.  (See AC ¶ 26.)[4]  Mr. Vaughn alleged that he was injured on the job on July 23, 2018, became temporarily disabled, was out on leave until May 27, 2020, and then, after returning to work, was "underpaid by being overtaxed" on September 15, 2022. (EEOC Form.)

The NYCTA terminated Mr. Vaughn's on March 28, 2024, after he became 100% disabled because of an injury he sustained on March 27, 2023; the injury was allegedly related to assault by a supervisor.  (AC ¶¶ 3, 5; AC Ex. 38 (Mr. Vaughn's reasonable accommodation request form).)  Because Mr. Vaughn was injured on the job, he was entitled under state law to up to one year of leave.  See N.Y. Civ. Serv. Law ("Civ. Serv. Law") § 71; see also N.Y. Comp. Codes R. & Regs. tit. 4, § 21.8(a)(1), (c).  On February 2, 2024, NYCTA sent Mr. Vaughn a letter warning him that, at the expiration of his one-year leave on March 28, 2024, his employment would be terminated pursuant to Civil Service Law section 71.  (AC ¶ 4; AC Ex. 36.)  In the letter, consistent with statutory requirements, Mr. Vaughn was given the option to either request to be reclassified to another title, or to seek a reasonable accommodation to avoid termination.  (AC ¶ 4; AC Ex. 36, at 1-2.)

Mr. Vaughn chose to seek a reasonable accommodation on March 19, 2024, requesting additional time off from work for an undetermined period of time.  (AC ¶ 4; AC Ex. 36, at 2-3; AC Ex. 38, at 1, 3.)  Specifically, in the section of the form for identification of the

---

[4]    Plaintiff incorporates, by reference, the Charge of Discrimination he filed with the EEOC, dated April 4, 2023 ("EEOC Complaint").  This document has previously been produced to the Court in Plaintiff's filings in related cases.  (See Complaint at 45); Vaughn v. Metro. Transit Auth., No. 23-cv-08121-LTS, Dkt. No. 1 ("EEOC Form"); see also Third Amended Complaint, Vaughn v. Metro. Transit Auth. ("Vaughn I"), No. 22-cv-03221-LTS, Dkt. No. 43.

requested accommodation(s), Mr. Vaughn wrote: "More time [*sic*] from regular duties under New York Civil Service Law section 71, section 2.7 of the collective bargaining agreement and section 8 of the amended 2005 Memorandum of Understanding (for assault)."  (AC Ex. 38, at 1.) On the same form, Mr. Vaughn's healthcare provider recorded her diagnosis of Mr. Vaughn's impairment and her understanding of its implications.  She explained her understanding of the essential functions of his job as including "greeting customers, making sure doors and controls are working, make announcements, stick their head out to give an all clear signal, and prepare trains for road service."  (Id. at 2.)  She then diagnosed Mr. Vaughn with both physical and mental impairments, described as "[l]eft shoulder pain" and "acute stress disorder."  (Id.)  She listed the restrictions that could affect Mr. Vaughn's "ability to reasonably perform the essential functions of [his] job" as "no lifting, pushing, pulling or carrying heavier than 7 to 10 pounds[,] [a]void possible triggers such as trains/stations[,] no repetitive or forceful movements of the upper extremities."  (Id. at 3.)  When asked what adjustments would enable Mr. Vaughn to reasonably perform the essential functions of his job and for how long Mr. Vaughn would need the reasonable accommodation, the healthcare provider wrote: "Prognosis is guarded. Patient has a 100% total temporary disability."  (Id.)

Mr. Vaughn's request for an extension of his leave was denied.  (AC ¶¶ 5-6, 23-24.)  His employment was ultimately terminated by the NYCTA on March 28, 2024, pursuant to Civil Service Law section 71, following the expiration of his time out of work on injured-on-duty ("IOD") leave.  (AC ¶¶ 2-3, 6; AC Ex. 39.)

Mr. Vaughn also brings claims against the State Defendants arising out of his attempt to receive unemployment insurance following his termination by the NYCTA.  (AC ¶¶ 7-22, 29-40.)  Mr. Vaughn alleges that the DOL, the UIAB, ALJ Trotter, and DOL employee

Ms. Alnajjar "us[ed] [his] disability against [*sic*] as a reason to deny [him] unemployment insurance benefits" and "refus[ed] to accommodate [his] disability by not treating [him] equally as someone without a disability." (Id. ¶¶ 29, 36, 38.)

He recounts the relevant facts as follows. In April 2024, Mr. Vaughn applied to the DOL for unemployment insurance benefits. (Id. ¶ 7.) Ms. Alnajjar processed his application. (Id. ¶ 29.) The DOL sent Mr. Vaughn two notices of determination, both dated April 23, 2024. (Id. ¶¶ 12-14; AC Ex. 42, at 1-2.) The first notice of determination (the "First Determination") stated that Mr. Vaughn was disqualified from receiving unemployment benefits under N.Y. Labor Law section 593(1) because he had voluntarily quit his employment at NYCTA without good cause. (AC ¶ 14; AC Ex. 42, at 1.) The second notice of determination (the "Second Determination") stated that Mr. Vaughn was statutorily ineligible for unemployment benefits under N.Y. Labor Law section 591(2) because he was not capable of work "due to a medical situation," and that he must be "ready, willing, and immediately able to work to be eligible for unemployment benefits, which [he was] not." (AC Ex. 42, at 2; see also AC Ex. 38, at 3 (healthcare provider's note stating that Mr. Vaughn had a "100% total temporary disability").)

Mr. Vaughn requested a hearing before the UIAB to challenge the DOL's denial of his application. (AC ¶ 15; AC Ex. 42, at 4.) ALJ Trotter conducted a hearing on Mr. Vaughn's benefits application on September 25, 2024. (AC ¶¶ 18-19.) By decision dated September 27, 2024, ALJ Trotter reversed the First Determination, finding that Mr. Vaughn had not voluntarily quit his employment with the NYCTA. (AC Ex. 42(a), at 2.) She upheld the Second Determination, finding that Mr. Vaughn was temporarily totally disabled and therefore statutorily ineligible for unemployment benefits because he was not "capable of work." (Id.)

Mr. Vaughn appealed ALJ Trotter's decision to the UIAB.  (AC ¶¶ 21-22.)  On February 19, 2025, the UIAB upheld ALJ Trotter's decision.  (AC Ex. 42(e).)

Mr. Vaughn also alleges that the NYCTA and State Defendants have colluded against him by acting "like a cartel of corruption ran by State and Local government agencies to carry out corruption against the vulnerable public and cause unnecessary hardships and unnecessary danger[.]"  (AC ¶ 49.)  He further alleges that the "coordination and pattern among State and Local agencies and entities and the individuals within them such as the defendants to commit violations against me as well as try to accuse me of actions and violations . . . while not holding themselves and their co-defendants accountable gives off the impression that there are back door channels of communication between agencies to facilitate corruption like a secret cabal."  (Id.)  Later submissions by Mr. Vaughn appear to be offered in support of these claims. (See docket entry nos. 53, 58, 60, 63.)

## II.  DISCUSSION

A motion to dismiss a complaint for lack of subject matter jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), which "requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it."  Schwartz v. Hitrons Sols., Inc., 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  The reviewing court must "accept all factual allegations in the complaint as true and draw inferences in the light most favorable to the plaintiff" and "must address jurisdictional questions before reaching the merits." Id.  Motions to dismiss based on Eleventh Amendment sovereign immunity are brought and reviewed pursuant to Rule 12(b)(1).  Goonewardena v. New York, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")") for failure to state a claim upon which relief may be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must "draw all reasonable inferences in [p]laintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

Mr. Vaughn proceeds pro se.  The Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted).  But the "special solicitude" in pro se cases, Triestman, 470 F.3d at 475 (citation omitted), has its limits; to state a claim, pro se pleadings must nonetheless make a short and plain statement showing that the pleader is entitled to relief.

A.    The State Defendants Are Immune from Many of Mr. Vaughn's Claims

1.    Judicial Immunity

All of Plaintiff's claims against ALJ Trotter, including those against her in her personal capacity, are barred because judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities.  Mireles v. Waco, 502 U.S. 9, 11 (1991); Abrahams v. App. Div. of Sup. Ct., 473 F. Supp. 2d 550, 557 (S.D.N.Y. 2007) (ruling that judicial immunity bars personal-capacity claims against judges).  ALJs enjoy this same

immunity. Butz v. Economou, 438 U.S. 478, 514 (1978) (holding that persons performing adjudicatory functions within federal agency entitled to judicial immunity); Walker v. NYS Just. Ctr. for Prot. of People with Special Needs, 493 F. Supp. 3d 239, 248-49 (S.D.N.Y. 2020) (dismissing claims against ALJ based on judicial immunity). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." Id. (citations omitted). Mr. Vaughn's claims arise from ALJ Trotter's handling of his case before her, and thus absolute judicial immunity applies. The Court therefore dismisses all of Mr. Vaughn's claims against ALJ Trotter.

2.      Sovereign Immunity

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (second alteration in original) (internal quotation marks and citation omitted). This immunity shields states from claims for money damages, injunctive relief, and retrospective declaratory relief. See Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102 (1984). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Gollomp, 568 F.3d at 366.

The State of New York has not waived its immunity from suit under NYSHRL or NYCHRL, and thus Mr. Vaughn's claims under those statutes against the DOL, the UIAB, and Ms. Alnajjar in her official capacity are barred by sovereign immunity. See, e.g., Quadir v. N.Y. State Dep't of Lab., 39 F. Supp. 3d 528, 537-38 (S.D.N.Y. 2014).

Sovereign immunity also bars Mr. Vaughn's claims under Title II of the ADA against the DOL and the UIAB.[5]  (See AC ¶ 31; AC at 32, 34.)  While Congress has abrogated the states' sovereign immunity from claims under Title II of the ADA, 42 U.S.C.A. § 12202 (Westlaw through 119-80), the parameters of that abrogation are limited.  Courts must determine, on a "claim-by-claim basis," whether the conduct complained of violated Title II of the ADA in order to conclude that "Congress has validly abrogated a state's sovereign immunity from suit in the context of [that] particular Title II claim."  Mary Jo C. v. N.Y. State & Loc. Ret. Sys., 707 F.3d 144, 152 (2d Cir. 2013) (quoting United States v. Georgia, 546 U.S. 151, 159 (2006)).[6]  To state a claim under Title II or its implementing regulations, a plaintiff must first plead that he is a "qualified individual with a disability."  Goonewardena, 475 F. Supp. 2d at 324; see also 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (2016).  A "qualified individual" is one who "meets the essential eligibility requirements for the receipt of services or the participation in programs or

---

[5]    To the extent that Mr. Vaughn also brings claims under Title II of the ADA against Ms. Alnajjar in official capacity, she is immune for the same reasons as the DOL and the UIAB.  And to the extent Mr. Vaughn brings other federal claims against Ms. Alnajjar in her individual capacity, she cannot be found personally liable under Title II of the ADA, the Rehabilitation Act, or Title VII.  See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); Tomka v. Seiler Corp., 66 F.3d 1295, 1313–14 (2d Cir. 1995) (holding that the remedial provisions of Title VII, including § 2000e-5 as it applies to the anti-retaliation provision of the ADA, do not provide for individual liability), abrogated on other grounds by, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  Mr. Vaughn does not raise any other federal claims against Ms. Alnajjar in her individual capacity.

[6]    "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  Georgia, 546 U.S. at 159 (creating a three-part test to determine whether a Title II claim is barred by sovereign immunity).  Because Mr. Vaughn's claims fail the first prong of the Georgia test, the Court need not analyze the remaining prongs.

activities provided by a public entity."  42 U.S.C. § 12131; see also 28 C.F.R. § 35.104 (2024).

Because Mr. Vaughn was 100% disabled at the time he applied for benefits, he did not meet the

essential "ready, willing and able to work" requirement for receipt of unemployment benefits

under New York or federal law and consequently was not a qualified individual with a disability

in the context of unemployment benefit eligibility.  See N.Y. Lab. Law § 591(2); 42 U.S.C.

§ 503(a)(12).  The ADA's limited abrogation of sovereign immunity for viable Title II claims

does not apply to Mr. Vaughn's claims because he does not plead facts suggesting that he was a

"qualified individual" eligible for participation in the benefits program administered by the State

Defendants.  Mary Jo C., 707 F.3d at 152 ("[I]f a plaintiff cannot state a Title II claim, the court's

sovereign immunity inquiry is at an end.")

      The Court therefore dismisses Mr. Vaughn's NYSHRL, NYCHRL, and ADA

Title II claims against the DOL and the UIAB, and Mr. Vaughn's NYSHRL and NYCHRL

claims against Ms. Alnajjar in her official capacity, for lack of subject matter jurisdiction.

B.      Plaintiff Fails to State Any Other Federal Claims Against State Defendants

      Mr. Vaughn also brings claims against the DOL and the UIAB under the

Rehabilitation Act and Title VII.[7]  These claims are dismissed pursuant to Rule 12(b)(6) for

failure to state a claim. The State of New York has waived its right to sovereign immunity under

the Eleventh Amendment to claims arising under the Rehabilitation Act by accepting federal

funds.  See Keitt v. New York City, 882 F. Supp. 2d 412, 455–56 (S.D.N.Y. 2011) (citing

Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006)).  Even so, Mr. Vaughn fails to

state a claim under section 504 of the Rehabilitation Act for the same reasons he fails to state a

---

[7]     To the extent that Mr. Vaughn also brings Rehabilitation Act or Title VII claims against Ms. Alnajjar in her official capacity, they must be dismissed for the same reasons.

claim under Title II of the ADA—he is not a person who was ready to commence work at the time of his application.  See Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009) ("[T]he standard for Rehabilitation Act claims is generally the same as for [Title II] ADA claims, with the additional requirement that defendants must receive federal funding." (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003))).  Mr. Vaughn's Title VII claims against the DOL and the UIAB, neither of which he has an employment relationship with, are unsupported by any facts suggesting that either entity engaged in employment-related discrimination against him on the basis of his membership in a protected category or otherwise; accordingly, Mr. Vaughn fails to state a Title VII claim.  For the above reasons, the Court dismisses all of Mr. Vaughn's federal claims against all State Defendants.

C.      Plaintiff Fails to State a Section 1983 Claim

Mr. Vaughn alludes, in some of his submissions, to 42 U.S.C. section 1983.  The Court, in light of his pro se status, has read his complaint liberally to determine whether it can be construed as proffering a plausible legal or factual basis for such a claim against defendants who are not immune.  Accordingly, the Court reads his complaint liberally to assert claims of violation of the equal protection and due process clauses of the Fourteenth Amendment.  No such claims are viable with respect to the matters raised in Mr. Vaughn's amended complaint.

To the extent that Mr. Vaughn alleges a Fourteenth Amendment equal protection violation, the Court applies rational basis review to the viability of the claim because the disabled are not a protected class for Fourteenth Amendment purposes, nor are unemployment insurance benefits a fundamental right.  Goonewardena, 475 F. Supp. 2d at 325-26 ("The disabled are not a suspect class for purposes of the Fourteenth Amendment." (citations omitted)); Diotte v. Blum, 585 F. Supp. 887, 899 (N.D.N.Y. 1984) (interception of unemployment insurance payments did

not implicate a fundamental right).  Mr. Vaughn does not allege facts indicating that any defendant acted irrationally or lacked a legitimate reason for any alleged discriminatory action. Indeed, the Amended Complaint and its incorporated exhibits negate any basis for such an allegation, demonstrating that the NYCTA terminated Mr. Vaughn's employment in a manner consistent with the governing civil service statute after he provided medical documentation indicating that he was 100% disabled and needed to avoid trains and train stations despite his job requiring contact with both.[8]  (See AC ¶ 4; AC Ex. 38, at 1, 3.)  Similarly, Mr. Vaughn was denied unemployment benefits on the basis of documentation showing that he was 100% disabled and thus statutorily ineligible for those benefits.  (See AC ¶¶ 12-14; AC Ex. 42(a), at 2.) Because Mr. Vaughn's 100% disability provides a rational basis for both his termination from NYCTA and the denial of unemployment benefits, Mr. Vaughn fails to plead a viable equal protection claim against the non-immune defendants.

Furthermore, to the extent that Mr. Vaughn is pleading a Fourteenth Amendment due process violation, he fails to state a claim upon which relief may be granted because the Amended Complaint clearly alleges that he received notice of his termination and had an opportunity to—and did—request accommodation; it also alleges that he received a hearing on denial of unemployment benefits, was provided a further opportunity to appeal, and now has an avenue of appeal within the state court system.  See Brody v. Village of Port Chester, 434 F.3d 121, 131 (2d Cir. 2005) (holding that "if reasonable notice and opportunity for a hearing are given, due process will be satisfied").  Accordingly, the motions to dismiss the Amended

---

[8]    Despite his contention that he may have been entitled to a two-year leave of absence before termination because of the nature of his disabling injury, Plaintiff proffers no facts indicating that his 100% disability ceased at any time.  Nothing in the complaint suggests that the NYCTA treated any non-disabled person who was similarly situated differently, such as by giving them more leeway with respect to the duration of a leave.

Complaint of the NYCTA and the individual defendants (to the extent sued in their individual capacities) are granted pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to any claims asserted under 42 U.S.C. section 1983.

D.     Plaintiff Failed to Exhaust his Administrative Remedies for his Remaining Federal
        Claims Against the NYCTA

Before a plaintiff may bring a Title VII, ADA, or Rehabilitation Act claim in federal court, he must first file a charge with the EEOC.  Gomez v. N.Y.C. Police Dep't, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (citing Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006)) (addressing exhaustion of Title VII and ADA claims); Hodges v. Holder, 547 F. App'x 6, 7 (2d Cir. 2013) (addressing exhaustion of Rehabilitation Act claims).  While Mr. Vaughn filed an EEOC complaint regarding an alleged act of discrimination taking place on September 15, 2022 (EEOC Form), it is undisputed that Mr. Vaughn did not file another EEOC complaint after he was denied extended leave and then terminated.  In other words, the alleged discriminatory acts underlying this lawsuit occurred after Mr. Vaughn's single EEOC complaint was filed.

Under these circumstances, Mr. Vaughn's Title VII, ADA, and Rehabilitation Act claims against NYCTA may only "be brought in federal court if they are 'reasonably related' to the claim filed with the [EEOC]."  Williams, 458 F.3d at 70.  A claim is considered "reasonably related" if the "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks omitted).  In evaluating administrative exhaustion under this standard, the Court considers whether "the factual allegations made in the administrative complaint can fairly be read to encompass the claims ultimately pleaded in a civil action."  Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir.

2008).  Where, as here, "nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted."  McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).

There is no basis upon which the EEOC Complaint can fairly be read to prefigure Mr. Vaughn's Title VII claim.  At no point does it reference discrimination on the basis of race, gender, or any other class protected by Title VII.  Because Mr. Vaughn did not make any "factual allegations . . . describing . . . discriminatory conduct" prohibited by Title VII in his EEOC Complaint, his Title VII claims are "not 'reasonably related' to the claim filed with the agency."  Williams, 458 F.3d at 70; see also Acheampong v. N.Y.C. Health & Hosps. Corp., No. 11-CV-9205, 2015 WL 1333242, at *10 (S.D.N.Y. Mar. 25, 2015) ("Plaintiff's race, color, national origin and age discrimination claims are not reasonably related to the disability claims asserted in his Intake Questionnaire and Charge.").

Nor do the factual allegations in Mr. Vaughn's EEOC Complaint encompass his ADA or Rehabilitation Act claims.  In fact, the EEOC Complaint alleges discrimination on the basis of a completely different temporary disability.  The alleged disability underlying the EEOC Complaint arose when Mr. Vaughn was injured on the job in July 2018; the NYCTA accommodated that disability by placing him on leave for almost two years, and the disability was seemingly resolved by May 2020 when he returned to work.  By contrast, the alleged disability here stems from an injury sustained five years later, in March 2023.  The EEOC Complaint also alleges different discriminatory conduct, stating that Mr. Vaughn had been "discriminated against based on [his] disability" when he was "harassed and retaliated against by receiving money through unauthorized transaction with negative effects."  (EEOC Form.)  It makes no reference to any of the allegedly discriminatory conduct at issue here, such as denial of

a request for reasonable accommodation or termination of employment.  The conduct complained of in the instant action, therefore, is not reasonably related to the EEOC Complaint.  See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (holding that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are separate "incident[s] of discrimination" that must be challenged within 300 days.); Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002) (reasoning that subsequent formal disciplinary action was not within the scope of the EEOC's investigation into a complaint referencing only informal counseling).

Nor do Plaintiff's allegations support an inference that the instant action is reasonably related to his EEOC Complaint because the discriminatory conduct at issue constitutes retaliation for filing of that complaint.  Cf. Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (holding that, if a plaintiff has already filed an EEOC charge, the exhaustion requirement is met for a subsequent claim "alleging retaliation by an employer against an employee for filing [the] EEOC charge").  While the Amended Complaint does include a conclusory allegation of retaliation for filing of Vaughn I and the EEOC Complaint (AC ¶ 26), Mr. Vaughn does not allege how any of the NYCTA's conduct—declining to extend his one-year statutory leave or terminating his employment pursuant to New York law after his healthcare provider certified that he was 100% disabled—constituted retaliation for his protected activities.  Because "vague, conclusory accusations of 'retaliatory conduct' are insufficient to meet the . . . requirement of a specific linkage between filing an EEOC charge and an act of retaliation," there is no basis for a finding that his current claims are linked to the prior EEOC filing.  Alfano, 294 F.3d at 382; cf. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (complaint detailed factual and procedural background of initial claim

and connected the timing of subsequent adverse employment actions with the timing of plaintiff's initial lawsuit and EEOC complaint).

Mr. Vaughn's Title VII, ADA, and Rehabilitation Act claims against the NYCTA are therefore dismissed pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies. See McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007) (holding that "dismissal for failure to exhaust administrative remedies is more properly characterized as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)").

E.    Supplemental Jurisdiction

A district court has discretion to decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). For the above reasons, the Court dismisses all of Mr. Vaughn's federal claims. The Court accordingly declines to exercise supplemental jurisdiction of Mr. Vaughn's remaining claims because, generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted).

F.    Leave to Replead is Denied Because Amendment Would be Futile

While district courts generally grant a pro se plaintiff an opportunity to amend a complaint to cure its defects, leave to amend is not required where it would be futile. See Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). State and judicial immunity are preclusive of his claims against the institutional State Defendants, ALJ Trotter, and Ms. Alnajjar in her official capacity. As explained above, because Mr. Vaughn was unqualified for either unemployment benefits or a reasonable accommodation by extension of leave as a result of his being 100% disabled and unable to work in any capacity,

and because he had notice and opportunities to contest the relevant determinations, Mr. Vaughn has failed to state claims of discrimination and denial of due process. And, because over 300 days have passed since the discriminatory conduct alleged here, Mr. Vaughn cannot cure his failure to exhaust administrative remedies, precluding his Title VII, ADA, and Rehabilitation Act claims. Any further amendment seeking to litigate these claims further in this court would, therefore, be futile. Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

As set forth above, other pending motions and applications are denied as moot. [9] This Order resolves docket entry nos. 10, 16, 25, 34, and 38.

The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
        March 31, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[9]    This includes Mr. Vaughn's additional letters bringing additional laws and issues to the Court's attention. (Docket entry nos. 58, 60, 63.)